IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J.I.,[1]

          Plaintiff,

v.                                    Case No. 23-1260-JWB

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of the Commissioner of Social Security's final decision denying Plaintiff disability insurance benefits and supplemental security income. The matter is fully briefed and ripe for decision. (Docs. 8, 14, 15.) For the reasons stated herein, the decision of the Commissioner is REVERSED, and the matter is REMANDED for further consideration consistent with this order.

**I.   Standard**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied

---

[1] Plaintiff's initials are used in the caption to protect his privacy.

1

by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite his impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. § 416.920(e), (f), (g). At step four, the

agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

Additionally, and applicable to the order here, is the legal standard set forth in 20 C.F.R. § 404.1520c. Under that regulation, the ALJ must "articulate in every case how persuasive it finds the medical opinions and prior administrative medical findings of each medical source in the case record based upon consideration of all the regulatory factors in 20 C.F.R. § 405.1520c(c)(1-5)." *Kelly Renee K. v. O'Malley*, No. CV 22-2518-JWL, 2024 WL 775838, at *3 (D. Kan. Feb. 26, 2024) (citing 20 C.F.R. § 404.1520c(b)(1)). The two most important factors, which the ALJ must evaluate, are supportability (found in paragraph (c)(1)) and consistency (found in paragraph (c)(2)). *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ does not have to consider the remaining three factors (found in paragraphs (c)(3) through (c)(5)), unless "two or more medical opinions or prior administrative medical findings are equally persuasive about the same issue." *Kelly Renee K.*, 2024 WL 775838, at *3 (quoting § 404.1520c(b)(3)). And "equally persuasive" means the opinions "are (1) 'about the same issue' and are (2) 'both equally well-supported ... and [equally]

consistent with the record,' but (3) 'are not exactly the same.'" *Id.* (citation omitted).[2] Failure to comply with 20 C.F.R. § 404.1520c is grounds for (1) reversal of the Commissioner's final decision, and (2) a remand such that the reviewing court can properly assess how the ALJ reached his/her conclusions. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (explaining that the SSA's legal error is grounds for reversal even if the decision appears supported by substantial evidence); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (stating that applying the incorrect legal standards is grounds for reversal).

## II. Facts

In March of 2021, Plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act. (*See* Doc. 6 at 268–269.) He then applied for supplemental security income pursuant to Title XVI of the Social Security Act in April of 2021. (*Id.* at 277.) Plaintiff's inability to work (i.e., the start of his disability) allegedly began on April 25, 2019. (*Id.* at 270, 277.) Both applications were denied on June 25, 2021, and upon reconsideration, were again denied on September 21, 2021. (*Id.* at 22.) After the denials, Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (*Id.*) The hearing took place on October 6, 2022. (*Id.* at 44.) The ALJ rendered an unfavorable decision on April 25, 2023, concluding that Plaintiff was not disabled under the Social Security Act. (*Id.* at 23, 37.) The Appeals Council upheld the ALJ's decision. (*Id.* at 6.)

Based on the hearing transcript, Plaintiff's disability is largely based on his mental impairments. During the hearing, he stated that his depression and anxiety are the two main impairments that limit/prevent him from functioning and working. (*Id.* at 54–55.) However, his

---

[2] The court notes that the ALJ's description of medical finding as persuasive, partially persuasive, etc. is not standard for determining if the medical opinions are "equally persuasive" under 20 C.F.R. § 404.1520c(b)(3). *See Kelly Renee K.*, 2024 WL 775838, at *3.

4

applications for disability insurance benefits lists the following mental impairments: anxiety, obsessive-compulsive disorder, depression, bipolar, and any related disorders. (*Id.* at 74, 75.) His applications for reconsideration list anxiety and obsessive-compulsive disorder as the mental impairments. (*Id.* at 146, 147.) The applications for reconsideration also identify migraines as a diagnosis supporting his disability claims. (*See id.*)

Despite Plaintiff's claims that his depression and anxiety are the main drivers of his disability,[3] the ALJ concluded that Plaintiff suffers from the following physical and mental impairments: asthma, obesity, bipolar disorder, generalized anxiety disorder, and social anxiety with panic attacks. (*Id.* at 25.) The ALJ also concluded that Plaintiff's impairments do not meet the level of severity of the listed impairments in 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.* at 26.) The ALJ then identified Plaintiff's RFC:

> I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but has nonexertional limitations including can occasionally climb ladders, ropes and scaffolds; and can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and balance as defined by the SCO. The claimant can occasionally work at unprotected heights or with moving mechanical parts. The claimant can never tolerate exposure to dust, odors, fumes and pulmonary irritants beyond a level found in an indoor work environment such as an office or retail store. The claimant is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes. The claimant can occasionally respond to and have interaction with supervisors and coworkers, and never with the general public.

(*Id.* at 29.) The ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs in the national economy Plaintiff can perform. (*Id.* at 35.) As a result, the ALJ found Plaintiff not legally disabled under the Social Security Act through the date of his decision (April 25, 20219). (*Id.* at 36.)

---

[3] Indeed, Plaintiff's briefing even states that his alleged disability relates to his depression and anxiety. (Doc. 8 at 6.)

In the matter here, Plaintiff takes issue with the ALJ's decision for two reasons: (1) the ALJ's RFC assessment is not supported by substantial evidence, and (2) the ALJ failed to comply with the regulations governing the analysis and articulation of equally persuasive medical opinions. (Doc. 8 at 1.)

### III.   Analysis

The court's analysis first focuses on Plaintiff's second argument and concludes that the ALJ complied with the regulations that govern how equally persuasive medical opinions are to be evaluated.

To reiterate, 20 C.F.R. § 404.1520c establishes how an ALJ must evaluate equally persuasive medical opinions. An ALJ must explain how persuasive it finds medical opinions and administrative medical findings from the record using the five factors in § 405.1520c(c)(1-5). *Kelly Renee K.*, 2024 WL 775838, at *3 (citing 20 C.F.R. § 404.1520c(b)(1)). The factors supportability and consistency are the most important factors, and the ones that the ALJ must consider. *See* 20 C.F.R. § 404.1520c(b)(2). The remaining three factors (found in paragraphs (c)(3) through (c)(5)) need not be considered unless the medical opinions are equally persuasive on the same issue. *Kelly Renee K.*, 2024 WL 775838, at *3 (quoting § 404.1520c(b)(3)). Equally persuasive opinions "are (1) 'about the same issue' and are (2) 'both equally well-supported ... and [equally] consistent with the record,' but (3) 'are not exactly the same.'" *Id.* (citation omitted).

Plaintiff argues that the ALJ failed to apply the correct legal standards when assessing the medical opinions in the record. (Doc. 8 at 14.) He argues that the medical opinions were equally persuasive, as defined by § 404.1520c(b)(3), yet the ALJ only considered whether the medical opinions were well-supported and consistent and then failed to consider the remaining three factors in § 404.1520c(c)(3) through (c)(5). (*Id.* at 15.) The Commissioner disagrees. He acknowledges

6

that the ALJ considered the supportability and consistency of the medical opinions. (Doc. 14 at 10.) However, he argues that the two medical opinions the ALJ relied upon were not equally supported and equally consistent on the same issue. (*Id.*) Thus, according to the Commissioner, the ALJ did not need to analyze the (c)(3)–(5) factors. (Doc. 14 at 10.)

Based on the court's reading of the ALJ's decision, he adhered to the regulations and did not need to assess the (c)(3)–(5) factors. The ALJ considered the state agency psychological consultants, Dr. Hachinsky, and Dr. Neufeld's opinions. (Doc. 6 at 33–34.) Although each doctor opined on how Plaintiff's mental impairments affect his ability to work, each opinion addressed a *different issue* regarding the mental impairments. The state agency consultants' opinions pertained to Plaintiff's ability to interact with coworkers, concentrate in a workplace setting, maintain good work pace, and manage/adapt to changing workplace situations. (*Id.*) Dr. Hachinsky opined on Plaintiff's ability to sustain a forty-hour work week without a support system. (*Id.*) He concluded that Plaintiff would likely miss work at least four days a month or be unable to work 25% each workday. (*Id.*) And Dr. Neufeld opined on Plaintiff's ability to interact with the public and coworkers, and that he could intermittently interact with his supervisor and perform five- or more step instructions. (*Id.* at 34.) The court interprets the phrase "same issue" in § 404.1520c(b)(3) as meaning a specific issue addressed by a doctor or medical consultant such that the ALJ is forced to choose between two or more equally persuasive, but mutually exclusive or contradictory, opinions on the same issue. In such a circumstance, the regulations provide that the ALJ must consider the (c)(3)–(5) factors in determining which opinion to rely on. If the opinions were not mutually exclusive, there would be no need for the ALJ to consider the (c)(3)–(5) factors; instead, the ALJ could weigh each opinion separately and decide to accept or reject each opinion, in whole or in part, just as with any other opinion because the opinions at issue could all be accurate without

7

contradicting another equally well supported and equally persuasive opinion. In this case, because each medical opinion addressed different issues relating to Plaintiff's mental impairments, the opinions, under the law, are not about the same issue. Therefore, the ALJ did not have to address the factors in subsections (c)(3) though (5).

However, with regard to Plaintiff's first argument—that the ALJ's RFC assessment, in light of his mental impairments, is not supported by substantial evidence—the court concludes after reviewing the ALJ's reasoning that it was not supported by substantial evidence.

Under the substantial evidence standard, evidence that a reasonable mind might accept as adequate must support the conclusion. *Biestek*, 139 S. Ct. at 1154. Based on Plaintiff's briefing, he takes issue with the ALJ's conclusion about his mental impairments. (Doc. 8 at 1, 8.) The ALJ concluded that Plaintiff "is able to apply common sense understanding to carry out detailed, but uninvolved instructions in the performance of simple, routine and repetitive tasks in a work environment with no fast-paced production requirements involving only simple, work-related decisions and with only occasional judgment and workplace changes." (Doc. 6 at 29.) To reach that conclusion, the ALJ relied on Plaintiff's medical record, testimony, and opinion evidence. (*Id.* at 35.) Plaintiff asserts multiple arguments as to why the ALJ's RFC assessment is not supported by substantial evidence. (Doc. 8 at 9–14.) However, the court need not address all of Plaintiff's arguments, because the argument that the ALJ relied on improper evidence to reach the RFC assessment is sufficient to remand the case. (*Id.* at 10–11.).

Plaintiff relies on *Oslin v. Barnhart*, 69 F. App'x 942, (10th Cir. 2003), for his argument that the ability to complete daily chores and tasks do not support a finding that a person can work a regular job. In *Oslin*, the plaintiff suffered from both physical and mental impairments. *Id.* at 943. Within the section that addressed the ALJ's assessment of the mental RFC, the court

explicitly stated: "[Plaintiff's] minimum daily activities do not establish he can work on a consistent basis." *Id.* at 948. The plaintiff in *Oslin* testified that his daily activities included chores like cooking and cleaning as well as shopping and volunteering at a health clinic.[4] *See id*; *see also Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity'" (quoting *Frey v. Bowen*, 816 F.2d 508, 516–17)).

   In the present matter, the ALJ relied heavily on Plaintiff's own testimony regarding his basic daily activities, summarizing and relying on the substance of that testimony at least three times over the course of his written decision. Ultimately, the ALJ concluded that Plaintiff can work by relying almost exclusively on this testimony by Plaintiff and statements to his doctors about completing household chores and daily activities. Like the plaintiff in *Oslin*, Plaintiff testified that he completes minor household chores like preparing a sandwich and doing the dishes. (Doc. 6 at 33–34.) He also informed his medical providers that he had engaged in life activities like attending a wedding and going to a grocery store. (*Id.*) The ALJ relied on Plaintiff's testimony about his daily tasks and chores to contradict all of the consultants and doctors' recommendations. (*Id.*) Additionally, for Drs. Hachinsky and Neufeld, the ALJ contradicted their opinions on Plaintiff's mental impairments by relying on the treatment notes that discuss Plaintiff's attendance at a wedding and his venture to a grocery store. (*Id.*) According to the ALJ, because Plaintiff can complete daily chores and had sporadically engaged in life activities, his mental impairments were not as severe as he alleged, and his medical provider's opinions on that matter were only partially persuasive.

---

[4] In context, the court appeared concerned about ALJs providing insufficient analysis when discrediting claimant testimony. *Oslin*, 69 F. App'x at 948. Hence, it seems that the plaintiff testified to his sporadic performance of chores and daily activities as evidence of his limitations, and the ALJ failed to articulate why this testimony did not support the plaintiff's disability claim. *Id.*

9

However, as previously discussed, the Tenth Circuit has determined that a claimant's engagement in daily chores and life activities, standing alone, does not support a finding that a person can consistently work. Instead, this type of evidence can support an ALJ's conclusion that a person is employable, but it should not be regarded as the leading justification. Here, the evidence unrelated to Plaintiff's performance of chores and daily tasks is the following: (1) treatment notes where Plaintiff stated his anxiety had improved and his mood was stable, (*id.*), (2) Plaintiff's Global Assessment of Functioning scores, (*id.* at 34), and (3) his father's testimony about his mental impairments. (*Id.*) As for the treatment notes, the court does not find that Plaintiff's statements about minor improvements in his mood indicate he can consistently work— especially since the doctor's notes, despite recording some improvements, still concluded that Plaintiff struggled with social anxiety. (Doc. 6 at 508, 524.) Moreover, the ALJ concluded that Plaintiff's Global Assessment of Functioning scores were not persuasive, and he found Plaintiff's father's statements about his mental impairments unpersuasive because (1) they were based on casual observations, and (2) his father is not a medical source. (Doc. 6 at 34.) In effect, the ALJ discounted or found unpersuasive the evidence that supported a finding that Plaintiff could not work. And the affirmative evidence that supported the ALJ's conclusion was Plaintiff's statements about minor improvements (which, noted above, is not strong) and that he completed daily chores and tasks. Clearly, the ALJ predominately relied on Plaintiff's completion of daily chores and activities. Thus, the ALJ's conclusion about Plaintiff's mental impairments in the RFC assessment was not supported by substantial evidence, and the case is remanded to reassess Plaintiff's RFC on those grounds.

Plaintiff also requests costs and attorney's fees under the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412(d). However, the court directs him to 28 U.S.C. § 2412(d)(1)(B),

wherein Congress established a procedure by which a party can recover fees and other expenses pursuant toward the EAJA.  *See Goatcher v. Chater*, 57 F.3d 980, 981 (10th Cir. 1995).  The court cannot grant Plaintiff's request for costs and attorney's fees as permitted by the EAJA in this order.

### IV.     Conclusion

THEREFORE, the Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.  Moreover, Plaintiff's request for costs and attorney's fees under the EAJA is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.  Dated this 17th day of December, 2024.

s/ John W. Broomes  
JOHN W. BROOMES  
UNITED STATES DISTRICT JUDGE